Youssef H. Hammoud (SBN:321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: 949-301-9692
F: 949-301-9693
E: yh@lawhammoud.com

*Attorney for Plaintiff,*
*Pamela Koppel*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA KOPPEL,<br><br>     Plaintiff,<br><br>v.<br><br>TIMEPAYMENT, INC.; EQUIFAX INFORMATION SERVICES, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>     Defendants. | Case No.:  2:24-cv-5724<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br><br>1.  FCRA, 15 U.S.C. § 1681 *et seq.*<br>2.  CCRAA, Cal. Civ. Code § 1785 *et seq.* |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Pamela Koppel ("Plaintiff"), through her attorneys, alleges the following against TimePayment, Inc. ("TP"), Equifax Information Services, LLC. ("Equifax"), and Experian Information Solutions, Inc. ("Experian"), collectively ("Defendants").

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

2. Count II of Plaintiff's Complaint is based upon the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq*., which regulates credit reporting agencies and furnishers of information from reporting incomplete or inaccurate information on a consumer's credit report.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## **JURISDICTION AND VENUE**

4. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

5. Supplemental jurisdiction of the court arises under 28 U.S.C. § 1367 as the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

COMPLAINT AND DEMAND FOR JURY TRIAL

7. Defendants transact business here; therefore, personal jurisdiction is established.

### **PARTIES**

8. Plaintiff is a natural person residing in Burbank, California.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681(a)(c).

10. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1785.3(b).

11. Defendant TP is a fintech company that provides competitive lease financing solutions to consumers and is a furnisher of information, as contemplated by 15 U.S.C. § 1681(s)-2(a), (b) and Cal. Civ. Code § 1785.25. Defendant TP's principal place of business is located at 200 Summit Drive, Suite 100, Burlington, Massachusetts 01803. TP can be served through its agent of service of process, CT Corporation System, located at 330 N Brand Boulevard, Glendale, CA 91203.

12. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681(a)(f) and Cal. Civ. Code § 1785.3(d). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(a)(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

COMPLAINT AND DEMAND FOR JURY TRIAL

13. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681(a)(f) and Cal. Civ. Code § 1785.3(d). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(a)(d), to third parties. Experian can be served through its agent for service of process, CT Corporation System, located at 330 N Brand Boulevard, Glendale, California 91203.

14. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

### *Background Information*

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the

COMPLAINT AND DEMAND FOR JURY TRIAL

consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

17. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681(e)(b).

18. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

19. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20. Defendants Equifax and Experian are two of three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

21. The CRAs consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline

COMPLAINT AND DEMAND FOR JURY TRIAL

Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22. The CRAs obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

23. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants Equifax and Experian) to make lending decisions.

24. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

COMPLAINT AND DEMAND FOR JURY TRIAL

25. The information Defendants Equifax and Experian include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26. FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

27. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28. FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a) "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b) The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in

COMPLAINT AND DEMAND FOR JURY TRIAL

fact discharged, the CRA indicates that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29. Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

30. DTI compares the total amount a consumer owes to the total amount a consumer earns.

31. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

32. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

*Allegations Specific to Credit Reporting*

33. In or around April 2023, Plaintiff signed a commercial lease agreement with non-party PureLux H20 ("PureLux") for a water filtration system on behalf of and for use by her business Closeup Crew Productions, LLC ("CCP"), (the "Commercial Rental Agreement").

34. Non-party Joshua Sadighi ("Sadighi") is the owner of PureLux.

35. The Commercial Rental Agreement between CCP and PureLux did not have a personal guaranty executed by the Plaintiff.

36. The Commercial Rental Agreement was signed by the Plaintiff in her capacity as the president of CCP.

37. As such, the Plaintiff is not in any way personally liable and/or responsible for any amounts due and owed under the Commercial Rental Agreement.

38. PureLux contracted with Defendant TimePayment ("TP") for the billing of its commercial contracts, including the Commercial Rental Agreement.

39. As such, TP was supposed to handle the billing associated with Commercial Rental Agreement.

40. At the time the Plaintiff entered into the Commercial Rental Agreement on behalf of CCP, Plaintiff signed up for automatic payments and provided CCP's business banking information to TP.

41. Accordingly, all payments to TP should have been automatically deducted from CCP's business bank account on a monthly basis.

42. The May 2023 through August 2023 payments were made on time.

43. In or around August 2023, Plaintiff was informed that TP transferred their commercial contracts, including Plaintiff's Commercial Rental Agreement with PureLux, to a third-party administrative services company called LEAF.

44. Thereafter, Plaintiff made payments for the Commercial Rental Agreement to LEAF.

45. However, at one point in time, non-party LEAF began to tell Plaintiff that it was not handling payments for the Commercial Rental Agreement and that Defendant TP was the entity handling payments.

46. As such, LEAF would no longer accept payments from Plaintiff online.

47. When Plaintiff reached out to TP to inquire about who was handling the payments, Defendant TP informed Plaintiff that it was non-party LEAF.

48. To ensure she was not late, Plaintiff began to call LEAF and pay the amount of money that LEAF indicated she owed.

49. However, Plaintiff was confused because of the contrary statements and messages between LEAF and TP.

50. Because of this confusion, Plaintiff reached out to Sadighi to help figure out what was going on.

51. Further, in or around December 2023, Plaintiff learned that Defendant TP had reported to the CRAs that the account associated with the Commercial Rental Agreement (the "Account") was past due, which was inaccurate because her payments were up to date.

52. The reporting by Defendant TP did not indicate that the Account was a business debt.

COMPLAINT AND DEMAND FOR JURY TRIAL

53. The reporting by Defendant TP indicated that Plaintiff was individually responsible, which is patently false and/or misleading because the Account is associated with the Commercial Rental Agreement, a business debt with no personal guaranty.

54. The inaccurate reporting caused Plaintiff's credit score to drop significantly.

55. As such, Defendant TP furnished inaccurate and/or misleading information to one or more CRA.

56. In or around December 2023, Plaintiff contacted Sadighi and informed him of the payment and reporting issues with Defendant TP.

57. In or around January 2024, Defendant TP continued to furnish information to the CRAs indicating that Plaintiff was now 60 days past due on the account associated with the Commercial Rental Agreement.

58. Defendant TP furnished inaccurate and/or misleading information to one or more CRA.

59. In or around January 2024, Sadighi contacted Defendant TP to correct the inaccurate reporting on Plaintiff's consumer credit reports and get her account status to reflect accurate information (i.e., that she is current and not past due).

60. In or around January 2024, Sadighi communicated with Jenna Parsons ("Ms. Parsons"), a customer support representative employed by Defendant TP.

COMPLAINT AND DEMAND FOR JURY TRIAL

61. On or about January 15, 2024, Ms. Parsons emailed Sadighi and stated that the issue has been resolved, that the reporting issue was Defendant Experian's fault, and that there was a third-party breach on Defendant Experian's end that affected thousands of accounts.

62. Further, on or about January 17, 2024, Ms. Parsons emailed Sadighi and confirmed that Plaintiff's account is current and not past due.

63. As such, the reporting of the account

*Plaintiff's Disputes*

64. In or around December 2023 through January 2024, Plaintiff initiated and sent multiple disputes to Defendant Experian regarding the account associated with the Commercial Rental Agreement indicating that she was never late on her payments.

65. Upon information and belief, Defendant Experian received Plaintiff's disputes between December 2023 through January 2024 but failed to conduct a reasonable investigation.

66. Upon information and belief, Defendant Experian forwarded Plaintiff's disputes to Defendant TP as required under 15 U.S.C. § 1681i(a)(2).

67. Defendant Experian's dispute results indicated that it was still reporting the Account as past due with a balance owed.

COMPLAINT AND DEMAND FOR JURY TRIAL

68. In or around April 2024, Plaintiff obtained a copy of her consumer credit reports from Defendants Experian and Equifax, and non-party Trans Union.

69. Defendant Experian was reporting the Account as 60 days past for the months of January and February 2024, a past due balance of $147 and that Plaintiff was individually responsible for the Account.

70. Defendant Equifax was reporting the Account as 30 days past due in November 2023, 60 days past due in December 2023 and January 2024, and that Plaintiff was individually responsible for the Account.

71. The information reported by Defendants Experian and Equifax was patently inaccurate and/or misleading because the reporting makes it seem as though Plaintiff has a past due balance with TP even though her TP account was current.

72. The information reported by Defendants Experian and Equifax was patently inaccurate and/or misleading because the reporting makes it seem as though Plaintiff is personally and individually responsible for the Account, when the Account is a business debt without a personal guaranty (i.e., Plaintiff is not individually responsible for the debt).

73. The information reported by Defendants Experian and Equifax caused significant harm to Plaintiff's credit score.

74. On or about April 30, 2024, Plaintiff sent a dispute letter to Defendants Experian and Equifax via certified mail.

COMPLAINT AND DEMAND FOR JURY TRIAL

75. The dispute letters stated that the Account is related to a Commercial Rental Agreement and does not have a personal guaranty and the Account should not even be reporting on her consumer credit report.

76. Plaintiff provided a copy of the Commercial Rental Agreement with her dispute letters.

77. Further, Plaintiff stated that she had signed up for automatic payments and that she could not be late because all payments were supposed to have been automatically deducted from her business account by TP.

78. Plaintiff provided a copy of the automatic payment form that was executed for the Commercial Rental Agreement.

79. Moreover, Plaintiff's dispute letters indicated that Joshua Sadighi, the owner of PureLux got involved to help resolve the issue and he had communicated directly with Defendant TP who told Sadighi that Plaintiff's Account was current and not past due, and that the credit reporting issues was a problem caused by the credit reporting agencies, not Defendant TP.

80. Plaintiff provided a copy of the email communications between Sadighi and Defendant TP regarding the Account.

81. Additionally, the dispute letters requested that the dispute results, and a copy of Plaintiff's credit file, be sent via mail to the Plaintiff's address.

COMPLAINT AND DEMAND FOR JURY TRIAL

82. The dispute letters provided Defendants Experian and Equifax with Plaintiff's personal identifying information, including, Plaintiff's name, address, date of birth, social security number, a copy of her driver's license, a copy of a utility bill and a copy of her social security card.

83. Defendants Experian and Equifax received Plaintiff's dispute letters but failed to conduct a reasonable investigation.

84. Upon information and belief, Defendant Experian forwarded Plaintiff's dispute to Defendant TP as required under 15 U.S.C. § 1681i(a)(2).

85. Upon information and belief, Defendant Equifax forwarded Plaintiff's dispute to Defendant TP as required under 15 U.S.C. § 1681i(a)(2).

*Plaintiff's Dispute Results*

86. In or around May 2024, Defendant Equifax sent Plaintiff a letter requesting additionally identifying information to locate her credit file.

87. Plaintiff called Equifax to inquire about the letter requesting additional identifying information as she provided all her identifying information with her dispute letter.

88. During the call, Plaintiff was told that the dispute was closed, and it has been reported that the information associated with the Account was reporting correctly.

COMPLAINT AND DEMAND FOR JURY TRIAL

89. Defendant Equifax did not provide Plaintiff with her dispute results in the mail.

90. Defendant Experian did not provide Plaintiff with her dispute results in the mail.

91. In or around May 2024, Experian provided Plaintiff's dispute results via email, instead of through the mail as requested.

92. The Experian dispute results continued to report the Account with late payments and a past due balance.

93. Upon information and belief, Defendants Experian and Equifax did not investigate Plaintiff's disputes.

94. Rather than perform a reasonable investigation based on Plaintiff's disputes and rely on information known or should be known by Defendants Experian and Equifax, the Defendant CRAs merely parroted information furnished by Defendant TP despite awareness that the information was factually inaccurate, misleading and conflicted with information known by Equifax and Experian.

95. Defendants Experian and Equifax failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute(s).

96. Defendants Experian and Equifax failed, among other things, to review all relevant information regarding the dispute or ignored this information.

COMPLAINT AND DEMAND FOR JURY TRIAL

97. Further, Defendant TP failed to conduct a reasonable investigation after receiving notice of Plaintiff's disputes from Experian and Equifax.

98. Defendant TP failed, among other things, to review all relevant information regarding the disputes or ignored this information. Consequently, Defendant TP continued to furnish inaccurate data to Experian and Equifax despite knowledge of Plaintiff's disputes and otherwise possessing information from which Defendant TP should have reported accurate information about the Account.

99. The reporting of the Account was patently false and/or materially misleading as the Account purports to be a consumer debt that is the individual responsibility of Plaintiff when it is actually a business debt that is the responsibility of CCP, and there is no personal guaranty.

100. The reporting of the Account was patently false and/or materially misleading as the Account was never late and Defendant TP stated that Plaintiff was in fact current and not past due.

### *Damage due to inaccurate credit reporting*

101. Defendants' inaccurate reporting caused Plaintiff's credit score to decrease and credit worthiness to suffer.

102. The inaccurate credit reporting has caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, headaches, anxiety, embarrassment, sleepless nights, frustration, and confusion.

COMPLAINT AND DEMAND FOR JURY TRIAL

103. Further, Plaintiff incurred out-of-pocket costs for having to send the dispute letters via certified mail.

104. Defendants' conduct was malicious and/or oppressive.

105. Defendants had all the information they needed to update Plaintiff's credit report and failed to do so.

106. Defendants Experian and Equifax failed to conduct a reasonable investigation upon receipt of Plaintiff's disputes.

107. Defendant TP furnished information to Defendants Experian and Equifax it knew or should have known was inaccurate.

108. As a result of Defendants' conduct, Plaintiff has sustained and continues to sustain actual damages.

## COUNT I
**Defendants Equifax and Experian**
**Violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.***

109. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

COMPLAINT AND DEMAND FOR JURY TRIAL

111. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

112. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

113. The FCRA requires credit reporting agencies, like Equifax and Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681(e)(b).

114. Defendant negligently and/or willfully violated 15 U.S.C. § 1681(e)(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to the Account.

115. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possesses information inconsistent with the reported information and possesses information establishing that the reported information is in fact inaccurate.

116. Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, in

promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

117. Defendants Equifax and Experian violated 15 U.S.C. § 1681(e)(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained concerning the Plaintiff.

118. Even after Plaintiff notified Defendants Equifax and Experian of the inaccuracies regarding the TP account, Defendants Equifax and Experian continued to report the inaccurate information.

119. When a consumer disputes the accuracy or completion of information included in a credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681(i)(a)(2)(A).

120. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

121. Additionally, Equifax and Experian must notify the person who furnished the disputed information of the consumer's dispute within five business days of its

COMPLAINT AND DEMAND FOR JURY TRIAL

receipt. When notifying the furnisher of the consumer's dispute, Equifax and Experian are to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681(i)(a)(2)(A).

122. Defendants' violations of 15 U.S.C. § 1681(i) include, but are not limited to the following:

    i.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii.    Failing to include all relevant information when notifying PMS of Plaintiff's dispute.

123. Instead of reasonably reinvestigating Plaintiff's dispute, Defendants "verified" the tradeline was accurate and continued to report the TP Account with a late payment history and a past due balance.

124. Defendants' acts, as described above, were done willfully and knowingly.

125. Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681(o).

126. Defendants Equifax and Experian violated 15 U.S.C. § 1681(i)(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed

COMPLAINT AND DEMAND FOR JURY TRIAL

information was inaccurate and record the current status of the disputed information
or delete the item from Plaintiff's credit report.

127. Defendants Equifax and Experian violated 15 U.S.C. § 1681(i)(a)(5)(A)
by failing to promptly delete the disputed inaccurate information from Plaintiff's
credit file or correct the inaccurate information upon reinvestigation.

128. As a result of Defendants Equifax and Experian's violations of 15 U.S.C.
§ 1681, Plaintiff suffered actual damages which have been further described above.

129. Defendants Equifax and Experian violated 15 U.S.C. § 1681(i)(a)(6)(A)
by failing to provide written notice to Plaintiff of the results of the reinvestigation by
mail.

130. Defendants Equifax and Experian's violations were willful, rendering
each Defendant individually liable for punitive damages in an amount to be
determined by the Court pursuant to 15 U.S.C. § 1681(n).

131. In the alternative, Defendants Equifax and Experian were negligent,
which entitles Plaintiff to recovery under 15 U.S.C. § 1681(o).

132. Plaintiff is entitled to recover actual damages, statutory damages, costs
and attorney's fees from Defendants in an amount to be determined by the Court
pursuant to 15 U.S.C. § § 1681(n) and 1681(o).

### COUNT II
**Defendant TP**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

COMPLAINT AND DEMAND FOR JURY TRIAL

133. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein at length.

134. On at least one occasion within the past two years, by example only and without limitations, Defendant TP violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

135. The FCRA requires a furnisher, such as TP, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the dispute information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

136. Plaintiff notified the Defendant CRAs in or around December 2023 through in or around April 2024, that the TP account was reporting inaccurately because all her monthly payments to TP were up to date and paid in full, that the TP Account was a business debt that Plaintiff was not personally responsible for, that TP itself stated the Plaintiff was current and not past due, and that the issue was one with the credit reporting agencies and not TP's reporting. Thereafter, the Defendant CRAs notified Defendant TP that Plaintiff was disputing the information it had furnished to the credit reporting agencies and forwarded the dispute to TP.

COMPLAINT AND DEMAND FOR JURY TRIAL

137. TP is liable under sections 1681(n) and 1681(o) of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(B):

    a.  Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

    b.  Willfully and negligently failing to review all relevant information concerning Plaintiff's TP account;

    c.  Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d.  Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

    e.  Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to the credit reporting agencies; and

    f.  Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

COMPLAINT AND DEMAND FOR JURY TRIAL

138. TP is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## COUNT III
**Defendants Equifax and Experian**
**(Violations of the Cal. Civ. Code § 1785 *et seq.*)**

139. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

140. Defendants violated the CCRAA. Defendants' violations include, but are not limited to, the following:

141. Defendants violated Cal. Civ. Code § 1788.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

142. Defendants violated Cal. Civ. Code § 1785.16 *et. seq.*, including but not limited to, by:

    a. failing to reinvestigate the disputed information;

    b. failing to review and consider all relevant information submitted by Plaintiff with respect to the disputed information;

    c. failing to notify the Plaintiff of the dispute results in writing;

143. Defendants' acts, as described above, were done willfully and knowingly.

COMPLAINT AND DEMAND FOR JURY TRIAL

144. Consequently, Defendants are liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## COUNT IV
**Defendant TP**
**(Violations of the Consumer Credit Reporting Agencies Act,**
**Cal. Civ. Code § 1785 *et seq.*)**

145. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

146. Defendant violated the CCRAA. Defendant's violations include, but are not limited to, the following:

    a. Defendant violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to the credit reporting agencies that Defendant knew or should have known is incomplete or inaccurate

        i. Defendant TP furnished inaccurate information to Defendants Equifax and Experian on more than one occasion within the two years preceding the filing of the Complaint indicating that Plaintiff was late on her payments to TP;

        ii. Defendant TP furnished inaccurate information to Defendants Equifax and Experian on more than one occasion within the two years preceding the filing of the Complaint indicating that Plaintiff was individually responsible for the Account, instead of

COMPLAINT AND DEMAND FOR JURY TRIAL

furnishing information that the Account was actually a business debt without a personal guaranty.

   iii.  Defendant TP received notice of Plaintiff's multiple disputes from the Defendant CRAs with respect to the inaccurate reporting of the TP account;

   iv.  Even after the multiple disputes, Defendant TP continued to inaccurately furnish information to the credit reporting agencies;

147. Defendant's acts, as described above, were done willfully and knowingly.

148. As a result of the foregoing violations of the CCRAA, Defendant is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Pamela Koppel respectfully requests that judgment be entered against Defendants TimePayment, Inc., Equifax Information Services, LLC, and Experian Information Solutions, Inc. for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681(n)(a) and 15 U.S.C. § 1681(o)(a)(1);

C. Statutory damages pursuant to 15 U.S.C. §1681(n)(a)(1)(A);

COMPLAINT AND DEMAND FOR JURY TRIAL

D. Punitive damages pursuant to 15 U.S.C. § 1681(n)(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681(n)(a)(3) and 1681(o)(a)(2);

F. Declaratory judgment that Defendants violated the CCRAA;

G. Actual damages pursuant to the CCRAA, Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(a)(2)(A);

H. Punitive damages of $5,000.00 per violation pursuant to the CCRAA, Cal. Civ. Code § 1785.31(a)(2)(B);

I. Costs and attorney's fees pursuant to the CCRAA, Cal. Civ. Code § 1785.31(a)(1);

J. Punitive damages to be determined at trial, for the sake of example and punishing Defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

K. Awarding Plaintiff any pre-judgment and post judgment interest as may be allowed under the law; and

L. Any other relief that this Court may deem appropriate.

//

//

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED,

**HAMMOUD LAW, P.C.**

Dated: July 08, 2024

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud, (SBN #321934)
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorney for Plaintiff,*
*Pamela Koppel*

COMPLAINT AND DEMAND FOR JURY TRIAL